# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HEATHER JANDA HAY, individually and on behalf of the GUCCI AMERICA, INC. RETIREMENT AND SAVINGS PLAN n/k/a KERING AMERICAS, INC. RETIREMENT AND SAVINGS PLAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GUCCI AMERICA, INC., BENEFIT PLANS COMMITTEE GUCCI AMERICA, INC. n/k/a BENEFIT PLANS COMMITTEE KERING AMERICAS, INC., KERING AMERICAS, INC., and DOES NO. 1-10, whose names are currently unknown,**<br><br>**Defendants.** | No. 2:17-cv-07148(CCC/CLW)<br><br>*Civil Action*<br><br><br>Return Date: Jan. 16, 2018<br><br>Oral Argument Requested |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................1

FACTUAL BACKGROUND..................................................................5

LEGAL STANDARDS ...........................................................................9

ARGUMENT ........................................................................................11

I.      Plaintiff Lacks Article III Standing To Pursue Claims Regarding
        Investments She Did Not Make And Fees She Did Not Pay ......................11

II.     Plaintiff's Claim Regarding The T. Rowe Price 2050 Target Date
        Fund Fails As A Matter Of Law..................................................17

III.    Even If Plaintiff Had Constitutional Standing To Challenge Other
        Funds, Her Contention That Defendants Allowed Other Participants
        To Pay Excessive Fees Fails To State A Plausible Claim............................18

        A.      Plaintiff's Claim Fails Under Controlling Third Circuit
                Precedent ...............................................................19

        B.      Plaintiff's Miscellaneous Critiques Of The Plan's Investment
                Menu Fail ...............................................................23

        C.      Plaintiff's Claim That The Plan Paid Excessive Administrative
                Fees Fails As A Matter Of Law .......................................26

IV.     Plaintiff's "Underperformance" Allegations Fail To State A Claim ..........28

V.      Plaintiff's Derivative "Failure To Monitor" Claim Fails As A Matter
        Of Law ..................................................................29

CONCLUSION .................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amron v. Morgan Stanley Inc. Advisors, Inc.*,
   464 F.3d 338 (2d Cir. 2006) ..............................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................9, 10, 26

*Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contribution Plan v.*
   *Bank of N.Y. Mellon Corp.*,
   287 F.R.D. 216 (S.D.N.Y. 2012) ........................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................29

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006) .................................................................5

*Commc'ns Workers of Am. v. Alcatel-Lucent USA Inc.*,
   No. 15-8143, 2016 WL 7013463 (D.N.J. Nov. 30, 2016) .....................9, 12, 16

*Daugherty v. Univ. of Chicago*,
   No. 17-3736, 2017 WL 4227942 (N.D. Ill. Sept. 22, 2017) ...............16

*David v. Alphin*,
   817 F. Supp. 2d 764 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013) .....13

*DeFazio v. Hollister Empl. Share Ownership Tr.*,
   612 F. App'x 439 (9th Cir. 2015) ........................................................16

*Edgar v. Avaya, Inc.*,
   503 F.3d 340 (3d Cir. 2007) ...............................................................30

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014) ...................................................................10, 30

*Fuller v. SunTrust Banks, Inc.*,
   No. 11-784, 2012 WL 1432306 (N.D. Ga. Mar. 20, 2012) ................13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ....................................................................passim

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012) ...............................................................................9

*In re UBS ERISA Litig.*,
No. 08-6696, 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014) ....................13, 16

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
579 F.3d 220 (3d Cir. 2009) ............................................................................30

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
No. 11-1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2012) ...........................24, 25

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) ........................................................................8, 23

*McNair v. Synapse Grp. Inc.*,
672 F.3d 213 (3d Cir. 2012) ............................................................................16

*Meiners v. Wells Fargo & Co.*,
No. 16-3981, 2017 WL 2303968 (D. Minn. May 25, 2017) ......................23, 24

*PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan
Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ........................................................................11, 29

*Perelman v. Perelman*,
793 F.3d 368 (3d Cir. 2015) ........................................................................12, 15

*Renfro v. Unisys Corp.*,
No. 07-2098, 2010 WL 1688540 (E.D. Pa. Apr. 26, 2010) .......................23, 27

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011) ....................................................................passim

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
   No. 156-1839, 2016 WL 7494320 (D. Conn. Dec. 30, 2016) ..........20, 26, 27, 28

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010) ....................................................................9

*Sivolella v. AXA Equitable Life Ins. Co.*,
   No. 11-4194, 2016 WL 4487857 (D.N.J. Aug. 25, 2016)..................................24

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)................................................................11, 12

*Swain v. Wilmington Tr., N.A.*,
   No. 17-71, 2017 WL 3475713 (D. Del. Aug. 14 2017) .....................................13

*Sweda v. University of Pennsylvania*,
   No. 16-4329, 2017 WL 4179752 (E.D. Pa. Sept. 21, 2017).......................passim

*Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015)............................13, 14, 15, 16

*White v. Chevron Corp.*,
   No. 16-0793, 2017 WL 2352137 (N.D. Cal. May 31, 2017) ..........................5, 6

*White v. Chevron Corp.*,
   No. 16-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016)................20, 24, 29

*Yost v. First Horizon Nat'l Corp.*,
   No. 08-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011)...........................14

**STATUTES**

29 U.S.C. § 1104(a), ERISA § 404(a) ............................................................10, 18

29 U.S. C. § 1132(a), ERISA § 502(a) .................................................................12

## **INTRODUCTION**

Plaintiff Heather Amanda Hay ("Plaintiff" or "Ms. Hay") is a former participant in the Kering Americas, Inc. Retirement and Savings Plan (the "Plan"),[1] a 401(k) defined contribution plan.  Plaintiff's core contention underlying her Complaint is that Gucci America, Inc. ("Gucci"), the Benefit Plans Committee Gucci America Inc. n/k/a Benefit Plans Committee Gucci Kering Americas, Inc. (the "Committee"), and Kering Americas, Inc. ("Kering") (collectively, "Defendants") breached their fiduciary duties because the Plan allegedly paid excessive fees through the expense ratios charged by the Plan's various investment options.  Ms. Hay also alleges that a few of the investment options "underperformed."  She brings her claims under ERISA Section 404(a), codified at 29 U.S.C. § 1104(a).

First, Ms. Hay has no Article III constitutional standing to challenge the funds in which she did not personally invest because she has not suffered any individualized harm as to those funds.  Put simply, she did not pay the challenged fees for any of those funds and did not bear any alleged underperformance.  This alone forecloses nearly all of the claims in her Complaint, as she alleges that she exclusively invested in only a single fund:  the T. Rowe Price 2050 Target Date

---

[1]  During 2015, the Plan changed its name from the Gucci America, Inc. Retirement and Savings Plan to the Kering Americas, Inc. Retirement and Savings Plan.  Any references to the Plan refer to the Plan under either name, as applicable.

Fund.  Regarding this one fund in which she did invest, the mere fact that there is a cheaper, similar (but not identical) Vanguard Institutional 2050 fund (which fund did not even exist until 2015 and which had investment minimums that the Plan did not satisfy, *infra* at 17-18) is not sufficient to state a claim because, of course, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund[.]"  *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).  Plaintiff does not allege that Defendants' process for selecting this fund was flawed, or that Defendants even had a personal financial incentive for offering the T. Rowe Price 2050 Target Date Fund as an option that Plaintiff could choose—if she wanted—for her own retirement investing.

Moreover, even if Ms. Hay enjoyed Article III constitutional standing to challenge other fund options, her claims would still fail as a matter of law. Recognizing that a "defined contribution plan is designed to offer participants meaningful choices," the Third Circuit, in *Renfro v. Unisys Corporation*, 671 F.3d 314 (3d Cir. 2011), held that the plausibility of claims challenging the reasonableness of a plan's fees must be evaluated in light of "the range of investment options" offered to participants.  *Id.* at 327.  Applying that analytical framework, the Third Circuit rejected the plaintiffs' claims in *Renfro*—virtually identical to those alleged here—that the defendants breached their fiduciary duties

2

by allowing participants to pay excessive investment and recordkeeping fees through the expense ratios charged by the plan's investments.  The Third Circuit explained that because the plan allowed participants to choose from a mix of investment options, in different assets classes and charging different fees, the plaintiffs' various criticisms could not give rise to a reasonable inference that the defendants failed to "prudently and loyally" manage the plan.  *Id.* at 327-28.  Thus, *Renfro* teaches that plan fiduciaries satisfy their obligations under ERISA by providing participants with a range of investment options with a range of fees to make meaningful choices about how to invest their retirement savings.  This approach was recently applied by the district court in *Sweda v. University of Pennsylvania*, No. 16-4329, 2017 WL 4179752 (E.D. Pa. Sept. 21, 2017), granting Federal Rule of Civil Procedure ("Rule") 12(b)(6) dismissal of the plaintiffs' excessive fee claims.  *Id.* at *9.

The *Renfro* analysis squarely applies here.  The Complaint alleges that the Plan should have offered lower-cost Vanguard funds instead of some of the Plan's investment alternatives.  But the *Renfro* court, like numerous others, recognized that ERISA does not require a fiduciary to choose the cheapest fund available.  *See, e.g.*, *Renfro*, 671 F.3d at 327-28; *Hecker*, 556 F.3d at 586; *Sweda*, 2017 WL 4179752, at *9.  Plaintiff cannot dispute that the Plan's investment options fall

3

squarely within the mix and range approved in *Renfro* and other cases (*see infra* at 19-22) by including the requisite array of investment options with fees as low as 0.03%. Indeed, the Complaint itself details the ways in which the Plan offers varying investment options spanning the risk spectrum, but it also conveniently omits thousands of investments that Plaintiff could have chosen through a Plan "brokerage window." These facts alone doom Plaintiff's main contention that Defendants imprudently caused participants to pay excessive fees.

Finally, Plaintiff's underperformance claims fare no better. First, as with her other claims, Ms. Hay does not even allege underperformance with respect to the only fund in which she actually invested. Even as to those four Plan investment options that Ms. Hay claims underperformed, courts have rejected the notion that a plaintiff states a viable claim merely by focusing on the outcome of an investment—prudence does not require prescience.

The Court should dismiss the Complaint with prejudice.

# **FACTUAL BACKGROUND**[2]

Kering is the sponsor and administrator of the Plan.[3]  (¶ 11).  The Plan is a "defined contribution" plan under ERISA.  (¶¶ 2, 4, 16).  It offers participants the opportunity to participate in a tax-deferred retirement savings plan, and, as an additional benefit, Kering contributes to participants' retirement savings through matching employer contributions.  (¶¶ 8, 16).  Participants then direct their contributions and Kering's contributions into various investment options.  (¶ 16).

Based on its most recent Form 5500 submitted to the Department of the Treasury, the Plan has roughly 3,800 participants and $100 million in assets.  (*See* Excerpts from Form 5500 (2016), attached hereto as Ex. 1 to the Declaration of

---

[2]   The facts referenced herein come from the Complaint (cited as "¶ _"), documents referenced or relied upon therein, or other materials the content of which may be judicially noticed.  Courts may consider documents "attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case."  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citations omitted).  In ERISA cases, courts routinely consider the plan and plan-related documents, as well as statutorily required disclosures, IRS Forms 5500, and fund prospectuses.  *See, e.g.*, *Hecker*, 556 F.3d at 582-83 (plan summaries and prospectuses); *White v. Chevron Corp.*, No. 16-0793, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017) (taking judicial notice of, among other things, Form 5500 filing and a summary prospectus for a particular fund).

[3]   Gucci was formerly the Plan sponsor and administrator.  (¶ 9).

Eleanor R. Farrell ("Farrell Decl.")).  By all accounts, this is a small retirement

plan compared to plans with well over a billion dollars in assets.[4]

The Plan offers a broad menu of investment options to Plan participants,

substantially similar to the investment lineups in other lawsuits where courts have

dismissed similar claims pursuant to Rule 12(b)(6).  For example, Plan participants

can invest in among twenty-five core investment options spanning the risk-return

spectrum, from a government money market fund to a stable value fund, to bonds,

to U.S. equity funds.  (*See, e.g.*, ¶¶ 28, 51).  The Plan offers target date funds that

are designed to tailor portfolio risk to the projected retirement ages of the

participants who desire such funds.  (¶ 51).  Ms. Hay invested *exclusively* in one of

these target date funds—the T. Rowe Price 2050 Target Date Fund.  (¶¶ 8, 58).

The Plan also offers a brokerage window (the Schwab Personal Choice Retirement

Account) with thousands of other investment options from which to choose.  (*See*

Excerpts from Forms 5500 (2011-2016), Farrell Decl. at Ex. 1); *see also Hecker*,

556 F.3d at 590 ("'Where look-through investment vehicles [such as the brokerage

---

[4]  *See, e.g.*, *Renfro*, 671 F.3d at 319 (plan had nearly $2 billion worth of assets); *White*, 2017 WL 2352137, at *1 ("As of December 31, 2014, the Plan had over $19 billion in total assets and more than 40,000 participants with account balances.").  This is significant because "lower fee" "institutional shares [of certain investment options] are only available to larger institutions with more bargaining power and larger capital pools" and often require "minimum investment[s]."  *Sweda*, 2017 WL 4179752, at *4; (*see also* ¶ 31).

window] are available as investment alternatives to participants and beneficiaries, the underlying investments of the look-through investment vehicles shall be considered in determining whether the plan satisfies the requirements of [the regulation.]'") (quoting 29 C.F.R. § 2550.404c-1) (second alteration in original).

Participants can choose from these investment alternatives with expense ratios of the core investment options ranging from 0.30% to 1.31% (or 30 to 131 basis points ("bps")) and investment options through the Plan's brokerage window as low as 0.03% (or 3 bps).[5]   (¶¶ 28, 33; Mutual Funds Available in Schwab PCRA, Farrell Decl. at Ex. 2).  Of these funds, the Plan offers certain investments in lower-fee share class options (e.g., "institutional" class shares).  (¶¶ 31-33, 51). The Plan also offers a mix of passively managed index funds and actively managed

---

[5]   The gross expense ratio is the total cost of managing the mutual fund; the net expense ratio is the amount investors actually pay after waivers or rebates. Expense ratios are expressed as a percentage of total assets invested, e.g., 0.75%. *See Hecker*, 556 F.3d at 578.  As Plaintiff admits, voluntary fee waivers reduced the expense ratios of several investment options available in the Plan. (¶ 33).  Parenthetically, Plaintiff does not mention the source for the expense ratios in the Complaint or the dates where those expense ratios applied (mindful that the ratios can vary over time).  It should be further noted that Plaintiff incorrectly lists certain expense ratios.  For example, the DFA US Small Cap I expense ratio is 0.37%, not 0.52%.  (*Compare* 2016-2017 DFA US Small Cap I Prospectuses, https://www.sec.gov/Archives/edgar/data/355437/000119312516481893/d1145 42d497k.htm and https://www.sec.gov/Archives/edgar/data/355437/000119312517061625/d3020 62d497k.htm *with* ¶ 51).

7

funds, only some of which are managed by Transamerica, the Plan's recordkeeper. (¶¶ 28, 32, 51).  Passively managed funds do not make any independent investment choices but simply track an established market index, such as the Standard & Poor's 500 Index.[6]  Actively managed funds generally try to identify securities likely to outperform an index fund or invest in a portfolio designed to take a greater or lesser risk than an index.[7]  As a result, actively managed funds typically tend to have higher fees than passively managed index options.  (¶ 60).

The Plan has for years offered low-cost index fund options, including currently two index funds with expense ratios of 0.03% and nine index funds under 0.10%.  (Farrell Decl. at Ex. 2).[8]  Thus, participants who wanted a very low-cost option could invest in these index funds, but a participant who wanted other investment strategies could select options with different risk and return characteristics and different fees.

---

[6]   *See Loomis v. Exelon Corp.*, 658 F.3d 667, 669-70 (7th Cir. 2011).

[7]   *See id.*

[8]   *See also* Funds available through PCRA (last visited on Dec. 11, 2017)*,* https://www.schwab.com/public/schwab/investing/investment_help/investment _research/mutual_fund_research/mutual_funds.html?path=%2FProspect%2FRe search%2Fmutualfunds%2Foverview%2Fscreener.asp%3Fsymbol%3D

Ms. Hay did not invest in any of the Transamerica funds and did not pay any of the Transamerica fees—or bear any of the alleged underperformance—of which she is complaining.  (*See* ¶ 58).

## LEGAL STANDARDS

This motion proceeds under both Rules 12(b)(1) and 12(b)(6).

First, a motion to dismiss for lack of Article III constitutional standing is properly brought pursuant to Rule 12(b)(1) because standing is a matter of subject matter jurisdiction.  *Commc'ns Workers of Am. v. Alcatel-Lucent USA Inc.*, No. 15-8143, 2016 WL 7013463, at *2 (D.N.J. Nov. 30, 2016) (citing *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).  This is not a mere pleading standard; rather, Plaintiff bears the burden of proving subject matter jurisdiction.  *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243-44 (3d Cir. 2012).  For the reasons described below, Ms. Hay cannot discharge her burden.

Second, Rule 12(b)(6) requires dismissal of a complaint if it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  In applying this standard, the Court must disregard any allegations that are "no more than conclusions" and thus "not entitled to the assumption of truth."  *Santiago v.*

*Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).   From any remaining well-pleaded allegations, plaintiffs must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

In *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), the Supreme Court emphasized, in the context of ERISA breach of fiduciary duty of prudence causes of action, that "the motion to dismiss for failure to state a claim" is an "important mechanism for weeding out meritless claims."  134 S. Ct. at 2471.  To state a claim for breach of ERISA's fiduciary duty of prudence, the crux of the Complaint, Plaintiff must offer well-pleaded factual allegations plausibly showing that Defendants did not "act with the care, skill, prudence, and diligence *under the circumstances then prevailing* that a prudent man *acting in a like capacity* and familiar with such matters would use in the conduct of an enterprise of a *like character and with like aims*."  29 U.S.C. § 1104(a)(1)(B) (emphases added).  The test of prudence is the reasonableness of the fiduciary's decision-making process, not its outcome.  *Renfro*, 671 F.3d at 322.

Thus, it is not enough to disagree with or second-guess a fiduciary's decisions, or to complain that cheaper or better performing options were available.  And where, as here, the Complaint contains no allegations regarding the actual process the fiduciaries employed in making those decisions, Plaintiff faces a more

10

daunting burden:  she must allege sufficient factual matter from which the Court may reasonably infer that the fiduciaries' decision-making process was illegally flawed.  *See, e.g.*, *id.* at 327 ("[W]e are unable to infer from what is alleged that the process was flawed.") (quotations omitted); *PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (affirming Rule 12 dismissal of breach of fiduciary duty–investment claims; holding that a complaint lacking allegations regarding the fiduciary process may survive dismissal only "if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed").

As shown below, the Complaint's few factual allegations fall well short of establishing any plausible inference that Defendants employed an illegally flawed process in evaluating the Plan's investments and fees.  To the contrary, the allegations and judicially-noticeable facts demonstrate that the Plan's investment lineup, fees, and performance are objectively reasonable.

## ARGUMENT

### I.  Plaintiff Lacks Article III Standing To Pursue Claims Regarding Investments She Did Not Make And Fees She Did Not Pay.

To demonstrate Article III standing, a plaintiff must have "(1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc.*

11

*v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The first element, injury in fact, requires a showing that the "plaintiff suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

These constitutional standing requirements necessarily extend to claims brought by a participant suing under ERISA.  The Third Circuit has held that claims, like those here, demanding a monetary remedy under ERISA Sections 502(a)(2) and (a)(3) "require the plaintiff to allege an individualized financial harm traceable to the defendant's alleged ERISA violations." *Perelman v. Perelman*, 793 F.3d 368, 373, 376 n.8 (3d Cir. 2015).  This Court has also recognized the constitutional limits as applied to ERISA claims. *See Commc'ns Workers of Am.*, 2016 WL 7013463, at *1 (holding that plan participants failed to allege injury from depletion of ERISA plan assets since plaintiffs did not allege "that any medical benefits to which they are entitled have gone unpaid").

Here, Plaintiff cannot demonstrate standing to challenge nearly any of the investment options available in the Plan.

***First***, Ms. Hay has no constitutional standing to challenge funds in which she did not personally invest because she has not suffered any individualized harm

as to those funds.  Plaintiff invested in only one of the roughly twenty-five funds that she challenges.  (¶ 58 ("Plaintiff's contributions were invested *exclusively* in the T. Rowe Price 2050 Target Date Fund.") (emphasis added); ¶¶ 28-29, 51 (listing challenged funds)).  As to the numerous other funds in which Ms. Hay did *not* invest, she did not actually pay any of the supposedly "excessive fees" and did not suffer any alleged underperformance.  As such, she cannot have suffered any injury-in-fact and therefore lacks standing to challenge those funds' fees or performance.  *See, e.g.*, *In re UBS ERISA Litig.*, No. 08-6696, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015) ("*Taveras*").[9]

---

[9]  *See also Swain v. Wilmington Tr., N.A.*, No. 17-71, 2017 WL 3475713, at *4-5 (D. Del. Aug. 14 2017) (dismissing prohibited transaction claims under ERISA for lack of subject matter jurisdiction where plaintiffs sold artificially inflated stock before diminution in stock's value and therefore suffered no injury-in-fact sufficient to establish Article III standing); *Fuller v. SunTrust Banks, Inc.*, No. 11-784, 2012 WL 1432306, at *8 (N.D. Ga. Mar. 20, 2012) (holding that named plaintiff lacked Article III standing because, "beyond the bare assertion that a breach of fiduciary duty harms all plan participants, [plaintiff] has not described how the offering of a fund in which she did not invest caused her a non-speculative injury"); *Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*, 287 F.R.D. 216, 224 (S.D.N.Y. 2012) (plaintiff lacked standing to represent plans that invested in notes other than specific note he invested in because "Plaintiff has not suffered an 'injury-in-fact' with respect to . . . notes in which it did not invest"); *David v. Alphin*, 817 F. Supp. 2d 764, 781-82 (W.D.N.C. 2011) (dismissing breach of fiduciary duty claims concerning fund underperformance because no named

13

In *Taveras*, for example, a plan participant brought breach of fiduciary duty claims challenging the performance of an investment option in a 401(k) plan, such as the one here, where participants directed their own investment choices from a menu of options.  612 F. App'x at 29.  The plaintiff did not allege that she actually invested in the challenged fund, but rather tried to demonstrate an injury-in-fact by showing a diminution in the value of the plan's assets as a whole.  *Id.*  The Second Circuit agreed with the district court's finding that the plaintiff lacked constitutional standing because she did not suffer an individual harm related to the challenged fund to sufficiently connect *her* purported losses to the alleged fiduciary breaches.  *Id.*

Ms. Hay likewise lacks constitutional standing to challenge the funds in which she did not invest.  Plaintiff admits that she was able to direct her assets into different investment options, and her benefits (and any injury) are tied to the investments she made in her individual account.  She did not pay any of the allegedly excessive fees and did not suffer any alleged underperformance by the

---

plaintiff participated in the challenged fund), *aff'd*, 704 F.3d 327 (4th Cir. 2013); *Yost v. First Horizon Nat'l Corp.*, No. 08-2293, 2011 WL 2182262, at *6 (W.D. Tenn. June 3, 2011) (plaintiff who "never had any holdings in the First Funds . . . did not suffer the alleged injury-in-fact and does not have standing to sue for any breach of fiduciary duty as to the selection or retention of First Funds as an investment option").

other funds.  Like in *Taveras* and the other cases cited, she suffered no concrete harm from the other funds' alleged excessive fees or poor performance.  At most, Plaintiff has Article III standing with respect to the *one* fund in which she personally invested.

*Second*, Ms. Hay cannot circumvent the standing requirement under a theory of "representational standing" by alleging that she brings this suit "on behalf of the Plan."  (¶ 6).  In *Perelman*, the Third Circuit rejected the precise argument that a plaintiff "need not prove an individualized injury insofar as he seeks monetary equitable remedies in a 'derivative' or 'representatative' capacity on behalf of the Plan."  793 F.3d at 375-76.  Thus, as the Third Circuit explained, the fact that a plaintiff, such as Ms. Hay, seeks to sue on behalf of a plan does not excuse the need to demonstrate that he or she has suffered a redressable injury:

> [Plaintiff] argues that he need not prove an individualized injury insofar as he seeks monetary equitable remedies in a "derivative" or "representative" capacity on behalf of the Plan.  Our own case law provides no support for this theory, and other federal appellate courts have unanimously rejected it . . .  Accordingly, we conclude that [plaintiff] lacks standing to sue under § 502(a)(3) even in a purely representative capacity insofar as he seeks monetary equitable relief.

*Id.*[10]

---

[10]  *See also Taveras*, 612 F. App'x at 29 ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not

15

***Third***, Ms. Hay has already cashed out and is a former participant in the Plan (¶ 8).  Therefore, she also lacks Article III standing "vis-à-vis [her] claim for [the] prospective equitable relief" she seeks.  *DeFazio v. Hollister Empl. Share Ownership Tr.*, 612 F. App'x 439, 441 (9th Cir. 2015); *see also Commc'ns Workers of Am.*, 2016 WL 7013463, at *7 n.10 (noting that "make-whole equitable relief" such as the injunctive relief sought requires a showing of "injury-in-fact specific to Plaintiffs" under the Third Circuit's decision in *Perelman*) (internal quotation marks omitted).  Because Ms. Hay is a former Plan participant, she lacks constitutional standing to pursue this prospective injunctive relief, as she cannot show that she faces an imminent injury in the absence of the relief sought.  *See In re UBS ERISA Litig.*, 2014 WL 4812387, at *6 ("Insofar as Plaintiff's general requests for injunctive relief remain viable . . . , the Court finds that because she is no longer a participant in the SIP . . . , she lacks standing to pursue those remedies."), *aff'd sub nom. Taveras*, 612 F. App'x at 27; *accord McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 224-26 (3d Cir. 2012) (affirming  denial of class certification in consumer fraud class action where putative class representatives—

---

individualized injury to the plan participant."); *Daugherty v. Univ. of Chicago*, No. 17-3736, 2017 WL 4227942, at *6 (N.D. Ill. Sept. 22, 2017) (same).

former customers—lacked Article III constitutional standing to seek injunctive relief because they had not established any reasonable likelihood of future injury).

Thus, at most, Ms. Hay enjoys Article III standing with respect to the T. Rowe Price 2050 Target Date Fund in which she personally invested. She lacks constitutional standing to pursue—and the Court lacks jurisdiction to adjudicate—any claims with respect to any of the other funds.

## II.    Plaintiff's Claim Regarding The T. Rowe Price 2050 Target Date Fund Fails As A Matter Of Law.

Even if Ms. Hay has constitutional standing to assert a claim regarding the T. Rowe Price 2050 Target Date Fund, it fails as a matter of law.

*First*, as a matter of law, the mere fact that a cheaper fund was available in the marketplace cannot state a claim under ERISA. As the Seventh Circuit explained in *Hecker*:

> The fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems).

556 F.3d at 586; *see also Renfro*, 671 F.3d at 327-28 (rejecting similar claims).

*Second*, the Vanguard 2050 Institutional Target Date Fund that Ms. Hay claims was comparable to the T. Rowe Price 2050 Target Date Fund was not available until June 26, 2015, and she fails to allege that she was a participant in

17

the Plan at that time.  (*See* Vanguard Prospectus at 58-60,

https://www.vanguard.com/pub/Pdf/i1673.pdf).[11]

**Lastly**, even after June 2015, the Vanguard 2050 Institutional Target Date Fund required a minimum investment of $100 million.  (*Id.*).  Here, the Form 5500 for the Plan confirms that the Plan had less than $100 million in total at that time, and that the T. Rowe Price 2050 Target Date Fund had only about $6 million.  (¶ 4 (noting that the Plan had assets totaling $96.5 million at the end of 2015); Excerpts from Form 5500 (2015), Farrell Decl. at Ex. 1)).  Thus, the Vanguard 2050 Institutional Target Date Fund was not even available as an option for the Plan.

## III.  Even If Plaintiff Had Constitutional Standing To Challenge Other Funds, Her Contention That Defendants Allowed Other Participants To Pay Excessive Fees Fails To State A Plausible Claim.

Even if Ms. Hay had standing to challenge the other funds in the Plan in which she did not invest, the Complaint still fails to state a plausible claim. Plaintiff alleges that Defendants breached their fiduciary duties to the Plan in violation of ERISA Section 404(a), 29 U.S.C. § 1104(a), by causing participants to pay excessive fees through the Plan's expense ratios.  (*See* ¶ 5).  From this allegation, Plaintiff suggests that the Court must infer that Defendants failed to

---

[11]   *Available at*
https://institutional.vanguard.com/VGApp/iip/site/institutional/investments/productoverview?fundId=1670 (last visited Dec. 11, 2017).

prudently and loyally monitor the Plan's expenses.  (*See* ¶ 76).  But this theory—the lynchpin of the Complaint—fails under the analytical framework that the Third Circuit adopted in *Renfro*, and more recently applied by a district court in this Circuit in *Sweda*.

### A. Plaintiff's Claim Fails Under Controlling Third Circuit Precedent.

In *Renfro*, the plaintiffs asserted largely identical claims against the fiduciaries of the Unisys 401(k) plan.  They claimed that the defendants breached their fiduciary duties by, *inter alia*, failing to adequately leverage the plan's bargaining power; offering retail, rather than institutional, share class investment options; and allowing Fidelity, the plan's recordkeeper and only investment-fund provider, to receive excessive investment and recordkeeping fees through the plan's expense ratios.  671 F.3d at 319, 326-27.

The Third Circuit soundly rejected the plaintiffs' claims, affirming the Rule 12(b)(6) dismissal.  *Id.* at 327.  The Third Circuit emphasized that the plausibility of fiduciary breach claims asserting excessive investment and recordkeeping fees must be evaluated "against the backdrop of the reasonableness of the mix and range of investment options" offered.  *Id.* at 326.  Thus, considering the mix and range of options offered under the Unisys plan—which included seventy-three investments with expense ratios ranging from just 0.10% to 1.21%—the Third

Circuit held that the plaintiffs' various challenges to the plan's investments and fee structure could "not plausibly support" a fiduciary-breach claim under ERISA and failed as a matter of law. *Id.* at 327-28.

More recently, in *Sweda*, the court considered and rejected the plaintiffs' litany of challenges to the University of Pennsylvania plan based on the reasonable breadth of investment options available to participants. Relying on the analytical framework established in *Renfro*, the court found that the plaintiffs' "excessive fee" arguments in general failed to state a claim because "the mix and range of fee options included fees as low as 0.04%, which neither side claim[ed] [wa]s excessive." *Sweda*, 2017 WL 4179752, at *9.[12] The court held that the touchstone of a prudently designed ERISA defined contribution plan is if it "'offer[s] participants meaningful choices about how to invest their retirement savings[,]'" and "the plaintiffs' argument that fiduciaries must maintain a myopic focus on the

---

[12] Other recent decisions have also relied, in part, on *Renfro* in dismissing excessive fee claims pursuant to Rule 12(b)(6). *See, e.g., Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 156-1839, 2016 WL 7494320, at *15 (D. Conn. Dec. 30, 2016) ("Taken as a whole, the total menu of [approximately 16] investment options resulted in expense ratios ranging from 0.04% to 1.02%."), *aff'd on other grounds*, No. 17-0239, 2017 WL 4534782 (2d Cir. Oct. 11, 2017); *White*, 2016 WL 4502808, at *11 (holding that the plan fiduciaries provided a diverse mix of investment options and expense ratios for participants, ranging from 0.05% to 1.24%).

singular goal of lower fees was soundly rejected in *Renfro*." *Id.* (quoting *Renfro*, 671 F.3d at 327).

Here, the mix and range of investment options and overall expense ratios for the Plan's investment options are reasonable.  The Plan offers at least twenty-five core investment options with different risk and return characteristics, including a government money market fund, a bond fund, a stable value fund, and U.S. equity funds.  Participants can further choose from thousands of additional options (including numerous low-cost index funds) available through the Schwab brokerage window and managed by different companies.  *See supra* at 6.  This investment lineup is consistent with those upon which the courts in *Renfro* and *Sweda* relied in dismissing excessive fee claims under Rule 12(b)(6).  Similarly, the Plan's investment options, with expense ratios as low as .03%, are well within the fees that the courts in *Renfro* and *Sweda* held were reasonable as a matter of law, with the lowest-cost offering even less expensive than the cheapest offerings scrutinized in those rulings.[13]

Other circuit court rulings bolster this conclusion.  In *Hecker*, the Seventh Circuit affirmed the Rule 12(b)(6) dismissal of similar ERISA-fee claims where

---

[13]  *Renfro*, 671 F.3d at 319 (fees "ranged from 0.1% to 1.21%"); *Sweda*, 2017 WL 4179752, at *9 ("[I]ncluded fees as low as 0.04%.").

the plan offered twenty-three mutual funds, all managed by Fidelity (the recordkeeper for the Deere plan), and 2,500 additional funds through a brokerage window.  556 F.3d at 586.  As in *Renfro* (and here), it made no difference that the plan offered only retail share class mutual funds or that its recordkeeper was paid through asset-based revenue sharing from those funds.  *Id.* at 578-79.

The Plan's investment menu here falls comfortably within the "reasonable mix and range of investment options," *Renfro*, 671 F.3d at 328, approved in the above cases.  This fact demonstrates the implausibility of Plaintiff's claim that the Plan's alleged "deficiencies" caused participants to pay excessive fees.  Indeed, comparing the Plan's expense ratios (with .03% on the low end), with *Renfro*'s and those that other courts have approved reveals that Ms. Hay is not really challenging the reasonableness of the Plan's fees at all.  Instead, she seeks to hold Defendants liable for failing to get the *cheapest deal imaginable*.  But ERISA requires no such thing.  To the contrary, Defendants "offered participants a menu that includes . . . high risk, and potentially high-return funds, together with low-expense index funds that track the market, and low-expense, low-risk, modest-return bond funds. [They] ha[ve] left [the] choice to the people who have the most interest in the

22

outcome, and [they] cannot be faulted for doing this."  *Loomis*, 658 F.3d at 673-74.[14]

In sum, Plaintiff has not plausibly established that Defendants breached any fiduciary duty under ERISA.

## B.    Plaintiff's Miscellaneous Critiques Of The Plan's Investment Menu Fail.

Ms. Hay would have the Court ignore *Renfro* and the objectively reasonable mix and range of the investments and fees by criticizing individual elements of the Plan's investment menu and recordkeeping structure.  But even the sum of these miscellaneous challenges—which have previously been rejected by other courts—do not equal imprudence or disloyalty.

*First*, Plaintiff's argument that the Plan's fiduciaries were obligated to offer "cheaper" Vanguard funds cannot salvage her claims.  At every turn, Plaintiff contends that Defendants should have made available "less expensive" Vanguard funds instead of the funds offered in the Plan.  (*E.g.*, ¶¶ 33, 55, 58).  Even putting aside whether Plaintiff's self-selected comparator funds followed the same

---

[14]   *See also Hecker*, 556 F.3d at 586 ("[N]othing in ERISA requires [a] fiduciary to scour the market to find and offer the cheapest possible fund[.]"); *Renfro v. Unisys Corp.*, No. 07-2098, 2010 WL 1688540, at *6 (E.D. Pa. Apr. 26, 2010) ("ERISA does not require fiduciaries to get the best deal imaginable for the Plan."); *Sweda*, 2017 WL 4179752, at *9 (same); *Meiners v. Wells Fargo & Co.*, No. 16-3981, 2017 WL 2303968, at *2 (D. Minn. May 25, 2017) (same).

investment strategies or offered the same services as the Plan's investment options,

ERISA does not require a fiduciary to select the "cheapest" possible fund. *Hecker*,

556 F.3d at 586; *Sweda*, 2017 WL 4179752, at *9; *White v. Chevron Corp.*, No.

16-0793, 2016 WL 4502808, at *10 (N.D. Cal. Aug. 29, 2016). Indeed, the court

in *Meiners* recently rejected the comparison to Vanguard funds that Plaintiff makes

here. There, the court granted a Rule 12(b)(6) dismissal of the plaintiff's excessive

fees claim where the plaintiff alleged that the plan should have offered less-costly

Vanguard and Fidelity funds. 2017 WL 2303968, at *3. The court emphasized

that the complaint,

> in effect, attempts to hold Wells Fargo liable for failing to choose the
> cheapest fund. If such allegations were sufficient to survive a motion
> to dismiss, it would render fiduciaries liable to suit for failing to
> choose the cheapest, non-affiliated fund—even if that fund is plagued
> by other problems.

*Id.* (internal citation and quotation marks omitted).[15] Thus, the fact that Vanguard

offered purportedly cheaper alternatives to certain funds in the Plan is of no

consequence.

---

[15] *See also Amron v. Morgan Stanley Inc. Advisors, Inc.*, 464 F.3d 338, 345 (2d
Cir. 2006) ("That a mutual fund has an expense ratio higher than Vanguard, a
firm known for its emphasis on keeping costs low, raises little suspicion[.]");
*Sivolella v. AXA Equitable Life Ins. Co.*, No. 11-4194, 2016 WL 4487857, at
*71, n.38 (D.N.J. Aug. 25, 2016) (explaining that courts "give limited weight to
fee comparisons between traditional managers and Vanguard"); *Kasilag v.*

***Second***, Ms. Hay contends that the Plan should have offered different share class options (*e.g.*, institutional class shares) of the same fund and/or institutional share class options in completely different funds. (*E.g.*, ¶¶ 32, 57-58). Plaintiff does not even allege that the Plan could have invested in these institutional funds or would have satisfied the investment minimums for such funds. *See supra* at 17-18. Regardless of the factual impossibility of Plaintiff's share class argument—in light of the unavailability of alternatives and the investments minimums—this is just a new twist on the same theory rejected in *Renfro*, where the plaintiffs faulted the plan's fiduciaries because 67 of the plan's 73 options were retail share class mutual funds. 671 F.3d at 318-19. But even assuming that it would be possible for a smaller plan like the one here to offer different share class options of the same fund and/or institutional share class options in completely different funds, the Third Circuit found no basis to infer a fiduciary breach where "retail" class shares as opposed to lower-cost "institutional" versions of the same fund were offered. *Id.* In other words, where, as here, a plan offers a broad array of investment options with a range of fees, the mere fact that a different approach might have

---

*Hartford Inv. Fin. Servs., LLC*, No. 11-1083, 2012 WL 6568409, at *5 (D.N.J. Dec. 17, 2012) ("To be sure, the Vanguard comparison is extremely limited . . . [Vanguard] represents just one data point at the bottom end of the spectrum.").

yielded additional low-cost options cannot "nudg[e]" Plaintiff's claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quotations omitted).[16]

Similarly, in the recent decision in *Rosen*, the plaintiffs—represented by the same attorneys as Plaintiff here—also argued that actively managed mutual funds were "unsuitable" because of their relatively higher fees.  2016 WL 7494320 at *13.  The court rejected the plaintiffs' attempt to categorically condemn actively managed mutual funds, holding that the fiduciaries did not breach their fiduciary duties by charging excessive fees even where 11 of the 14 mutual funds (in a plan with 16 total investments) were actively managed.  *Id.* at *15.

Therefore, Plaintiff's mere allegation that the Plan should have offered a greater number of "less expensive" passively managed, institutional class funds is insufficient to state a plausible breach of fiduciary duty claim.

### C.   Plaintiff's Claim That The Plan Paid Excessive Administrative Fees Fails As A Matter Of Law.

Plaintiff also alleges that Transamerica, the Plan's recordkeeper, had a conflict of interest as to some of the funds offered in the Plan because it received

---

[16]   Courts have consistently rejected the notion that the mere inclusion of a fund with an expense ratio that is higher than that of the lowest share class violates the duty of prudence.  *See, e.g.*, *Hecker*, 556 F.3d at 586 (ERISA does not require the "cheapest possible" fund); *Sweda*, 2017 WL 4179752, at *9 ("Plaintiffs have only pled that the failure to replace these shares was a breach of fiduciary duty, which is insufficient to pass through the 12(b)(6) threshold.").

revenue sharing payments.[17]  (¶¶ 27, 36, 45-49).  Ms. Hay asks the Court to infer from these allegations that Defendants failed to prudently monitor the Plan's recordkeeping fees and services.  (¶ 44).  But these allegations do not state a claim for breach of fiduciary duty.

That a service provider (here, Transamerica) gets paid for its services does not create a conflict of interest, particularly where, as here, there is no allegation that Defendants have a financial incentive to pay Transamerica money or personally profit at the expense of the Plan.  Indeed, in every case cited above, *e.g.,* *Renfro* and *Sweda*, the claims were dismissed where, as here, the recordkeeper was paid through revenue sharing.  *See Renfro*, 2010 WL 1688540, at *7; *Sweda*, 2017 WL 4179752, at *2, 11; *see also Hecker*, 556 F.3d at 585; *Rosen*, 2016 WL 7494320, at *10 (collecting cases).  As the Seventh Circuit held in *Hecker*, because revenue sharing is derived from a fixed expense ratio, it does not increase the overall cost of an investment and thus is *immaterial* to participants.  556 F.3d at 585-86.  And it is not uncommon to have this type of revenue sharing arrangement,

---

[17]  Plaintiff repeatedly refers to the Transamerica funds offered in the Plan as "proprietary funds" (*e.g.,* ¶ 30), perhaps in an attempt to paint Defendants' conduct as improper.  But this is *not* a proprietary fund ERISA case where the challenged investments are both offered and managed by the sponsor of the fund.  Stated differently, neither Gucci nor Kering is in the financial services business and neither is affiliated with the Transamerica funds or stands to gain financial profit from them.

27

as Plaintiff well knows—her attorneys made virtually identical claims in *Rosen*. 2017 WL 4534782, at *3-4 (challenging arrangement where the service provider "would be compensated by fees paid directly from the plans it manages or indirectly through revenue-sharing arrangements entered into between [the service provider] and the mutual funds"). The court in that case rejected those arguments, and this Court should too. *Id.* (affirming dismissal of fiduciary breach and prohibited transaction claims where although Prudential, the service provider, "may hold a financial interest adverse to plan participants when it agrees to receive indirect payments from fund managers . . . such an arrangement, when disclosed and agreed upon by the employer, is not per se improper").

## IV.  Plaintiff's "Underperformance" Allegations Fail To State A Claim.

Plaintiff's allegation that some of the Plan's investment options "underperformed" fares no better. Ms. Hay alleges that four of the Plan's twenty-five core investments "underperformed." This, she claims, is somehow indicative of an imprudent fiduciary review process. (*See* ¶¶ 49, 55).

Besides the fact that it is undisputed that she never invested in any of these four funds and therefore lacks standing (*see supra* at 12-16), her allegations fail to state a claim. "Poor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate

28

investigation[.]"  *White*, 2016 WL 4502808, at *17; *see also Sweda*, 2017 WL 4179752, at *10 ("To begin, there is no cause of action in ERISA for 'underperforming funds.' . . . Chagrin does not inexorably become a cause of action.").  Plaintiff's challenge to just four funds (in which she did not invest) out of a total of twenty-five available core funds underscores that the fiduciary process here is working.  *See Sweda*, 2017 WL 4179752, at *10 ("A statistical sampling of funds would expect (all things being equal) half of the funds to be above benchmarks and half to be below benchmarks.").

In sum, Ms. Hay's "poor performance" allegations do not show that she has "nudged [her] claims [of fiduciary imprudence] across the line from conceivable to plausible," and this claim must be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also St. Vincent*, 712 F.3d at 721; *Sweda,* 2017 WL 4179752, at *10; *White,* 2016 WL 4502808, at *17.

## V.   Plaintiff's Derivative "Failure To Monitor" Claim Fails As A Matter Of Law.

In Count II, Plaintiff claims that Defendants are alternatively liable to the extent they failed to monitor other, unnamed fiduciaries responsible for the violations alleged in Count I.  (¶¶ 79-81).  This claim is wholly derivative of Plaintiff's other claims and thus fails for the reasons discussed above.  *See, e.g.*,

*Edgar v. Avaya, Inc.*, 503 F.3d 340, 350 n.15 (3d Cir. 2007), *abrogated on other grounds*, *Dudenhoeffer*, 134 S. Ct. 2459.[18]

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

---

[18]   Plaintiff's claim that Defendants breached their fiduciary duties by making alleged misrepresentations (*see* ¶¶ 61-68) should also be dismissed for failure to state a claim.  She does not allege that she read and relied on the purportedly misleading Form 5500s, or that the inadequate disclosures were material.  *See In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) ("[A] plaintiff must demonstrate that: (1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure.").  In any event, the Form 5500s even contain the very information that she says should have been included, showing how Plan participants chose to invest Plan assets.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

/s/ Jeremy P. Blumenfeld

Jeremy P. Blumenfeld (N.J. ID No. 015882000)
Brian T. Ortelere (to be admitted *pro hac vice*)
Eleanor R. Farrell (N.J. ID No. 027012011)
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000
Fax: (215) 963-5001
jeremy.blumenfeld@morganlewis.com
brian.ortelere@morganlewis.com
eleanor.farrell@morganlewis.com

*Attorneys for Defendants*

Dated:  December 11, 2017