NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HEATHER JANDA HAY,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GUCCI AMERICA, INC., et al.,<br><br>　　　　　Defendants. | Civil Action No.: 2:17-cv-07148<br><br><br>OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendants Gucci America, Inc., Benefit Plans Committee Gucci America, Inc. n/k/a Benefit Plans Committee Kering Americas, Inc., and Kering Americas, Inc. ("Defendants") to dismiss Plaintiff Heather Janda Hay's ("Plaintiff") complaint. (ECF No. 10). The Court has given careful consideration to the submissions from each party. Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. For the reasons that follow, Defendants' motion to dismiss is denied.

## II. BACKGROUND

Plaintiff is a former participant of a defined contribution employee pension benefit plan offered by Defendants (the "Plan"). (ECF No. 1 ¶ 8). The Plan "became effective on January 1, 1999, and served as a vehicle for retirement savings and to produce retirement income for employees of Gucci." (*Id.*). "Retirement income generated by the Plan depends upon contributions made on behalf of each employee by . . . Gucci[], deferrals of employee compensation and employer matching contributions, and from the performance of the Plan's investment options (net of fees and expenses)." (*Id.*). The Plan operates by permitting its participants to "direct the investment of their contribution's [sic] and Gucci's contributions into various investment options offered by the Plan." (*Id.* ¶ 16). Among these options are "various

mutual funds and a common collective trust." (*Id.*). According to Plaintiff, "[t]he Plan's assets are held [in a t]rust, which is administered by State Street Bank and Trust Company" ("State Street") and "[a]ll investments and asset allocation are performed through [such t]rust." (*Id.* ¶ 19). Plaintiff also alleges that "[t]he Plan pays Plan expenses from Plan assets, and substantially all administrative expenses are paid by participants as a reduction of investment income." (*Id.* ¶ 16).

Plaintiff's central contention in this matter is that Defendants mismanaged the Plan in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). More specifically, Plaintiff maintains that Defendants violated their fiduciary duties under ERISA by first, unduly relying on and failing to oversee Transamerica, the Plan's recordkeeper and investment manager, in Transamerica's selection and retention of Transamerica funds. That is, Plaintiff purports that "none of the Transamerica funds [that Transamerica] offered within the Plan were institutional funds or share classes, despite the fact that institutional funds are usually less costly." (*Id.* ¶ 31). Moreover, Plaintiff contends that "the proprietary institutional government money market fund currently offered . . . is significantly costlier than the non-government fund previously offered." (*Id.* ¶ 32). Plaintiff also asserts that Defendants' investments resulted in the unnecessary payment of additional fees to Transamerica that could have been avoided by investing differently, (*id.* ¶¶ 35; 38-42), and that Defendants have failed to ensure that Transamerica's share of revenue was equitable. (*Id.* ¶¶ 36-37).

Second, Plaintiff avers that Defendants permitted Transamerica to act as the Plan's recordkeeper and investment manager despite a conflict of interest. More specifically, Plaintiff argues that Transamerica is subject to a conflict of interest because Transamerica has the right to hire its affiliates as sub-advisors, and therefore, that Transamerica could "receive more revenue when it selects an affiliated fund rather than an unaffiliated fund." (*Id.* ¶ 46). Plaintiff does not

2

dispute that Transamerica disclosed such conflict in its Form ADV;[1] however, Plaintiff declares that "[i]n recent years, Transamerica has hired its affiliate, Aegon, as [a] sub-advisor for certain funds," and that "[e]ach of the funds Aegon currently sub-advises has a history of poor performance." (*Id.* ¶¶ 46, 48-49). According to Plaintiff, "[g]iven Aegon's underperformance, it is difficult to justify the hefty fees that the Plan pays to invest in those funds." (*Id.* ¶ 49).

Third, Plaintiff declares that Defendants allowed the Plan's investment options to be subject to excessive fees. In support of her argument, Plaintiff lists what she purports to be the Plan's "other investment options" of 18 mutual funds. (*Id.* ¶ 51). Plaintiff maintains that "[e]ach of these funds that the Plan offers are subject to excessive fees, although virtually all of the third-party funds offer institutional and other lower priced shares and there are less costly comparable alternatives in the market." (*Id.* ¶ 52; *see also id.* ¶¶ 53-58 (providing examples)). Plaintiff further contends that "Defendants also have failed to offer an appropriate compliment of passively managed mutual funds within the Plan." (*Id.* ¶ 60).

Finally, Plaintiff asserts that Defendants published misleading and inaccurate disclosures. That is, Plaintiff argues that "[w]hile the Plan's Audited Financial Statements for 2009, 2010, 2011, and 2012 indicate that substantially all of the Plan's investments are shares of mutual funds or money market funds managed by State Street, this has never been the case." (*Id.* ¶ 61; *see also* ¶¶ 62-67 (providing examples)). Based on the foregoing, Plaintiff avers that Defendants have violated their fiduciary duties under ERISA.[2] (*Id.* ¶¶ 75-78).

---

[1] "A Form ADV is a required submission to the SEC by a professional investment advisor that specifies the investment style, assets under management, and key officers of the firm." *S.E.C. v. Nadel*, 97 F. Supp. 3d 117, 120 n.1 (E.D.N.Y. 2015).

[2] Plaintiff also alleges a claim in the alternative for knowing breach of trust. (ECF No. 1 ¶¶ 79-81). Plaintiff's claim is based on the same facts as alleged in support of count one, and only applies

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if the court determines that it lacks subject-matter jurisdiction over a claim. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). One key aspect of this case-or-controversy requirement is standing. *See id.* "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (alterations in original) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

---

in the event that Defendants are not considered fiduciaries or co-fiduciaries under ERISA. (*Id.*). As it is not clear if Defendants raise an issue as to whether they are fiduciaries or co-fiduciaries under ERISA, and for the reasons set forth below, the Court will decline to dismiss count two of Plaintiff's complaint at this time.

To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' *i.e.*, an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, *i.e.*, traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." *Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)), *abrogated on other grounds by Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Federal Rule of Civil Procedure 12(b)(6)

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' . . . 'will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

### IV. <u>DISCUSSION</u>

In response to Plaintiff's allegations, *see supra* Part II, Defendants make two primary arguments. First, Defendants assert that Plaintiff lacks constitutional standing to challenge any Plan fund in which she did not invest. Second, Defendants maintain that Plaintiff fails to state a

5

claim upon which relief may be granted with respect to the one Plan fund in which Plaintiff did invest, (the "Fund"), as well as with respect to the remainder of Plan funds and Defendants' disclosures. Each of Defendants' arguments will be addressed in turn.

### A. Plaintiff Has Constitutional Standing to Challenge Plan Funds in Which She Did Not Invest

Defendants argue that Plaintiff lacks constitutional standing to challenge any Plan fund in which she did not invest because "she has not suffered any individualized harm as to those funds." (ECF No. 10-1 at 12-13). That is, "[a]s to the numerous other funds in which [Plaintiff] did *not* invest, she did not actually pay any of the supposedly 'excessive fees' and did not suffer any alleged underperformance." (*Id.* at 13). In response, Plaintiff declares that "[c]ourts regularly reject" such argument in these types of ERISA matters and cites to various cases in support of her position. (ECF No. 17 at 11-13 & nn.5-7).

Although in certain types of matters, courts have found that a plaintiff cannot suffer an injury from an investment that he or she did not purchase, "courts have declined to apply the above bright-line rule when addressing ERISA claims for breach of fiduciary duties." *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15-1614, 2016 WL 4507117, at *4 (C.D. Cal. Aug. 5, 2016) (citing cases). "Rather, courts look to the nature of the claims and allegations to determine whether the pleaded injury relates to the defendants' management of the Plan *as a whole*." *Id.*

In support of their position, Defendants cite to *In re UBS ERISA Litigation*, No. 08-6696, 2014 WL 4812387, at *7 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015), for the proposition that Plaintiff lacks "constitutional standing because she did not suffer an individual harm related to the challenged fund to sufficiently connect *her* purported losses to the alleged fiduciary breaches." (ECF No. 10-1 at 14). In a later decision by the Southern District of New York, however, the court opined that "[t]he persuasive value of *In re*

6

*UBS ERISA Litigation*—and the summary order affirming it—is limited." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 155 (S.D.N.Y. 2017). Instead, the court found that it was bound by Second Circuit precedent holding that a plaintiff "can establish constitutional standing to bring representative claims by pointing to injuries to Plan assets." *Id.* The court elaborated:

> Here, plaintiffs have sued in a representative capacity and allege that the Plan suffered millions of dollars a year in losses as a result of defendants' disloyal and imprudent decisions to offer the nine Affiliated Funds as investments. The fact that only some of these alleged losses manifested themselves in the named plaintiffs' individual accounts does not deprive plaintiffs of their standing to seek redress on behalf of the Plan for the broader injuries the Plan incurred.

*Id.* at 156 (citing cases).

Here, Plaintiff alleges in her complaint that Defendants mismanaged the Plan by choosing and maintaining Transamerica funds, as well as 18 other mutual funds, despite there being less costly options, a potential conflict of interest, better performing investments, and a lack of variety in the offered funds. (*See generally* ECF No. 1). As a result of such mismanagement, Plaintiff purports that she was subject to excessive fees and underperformance. (*See id.*). "Thus, [the Court finds that] Plaintiff[] here 'alleges an injury rooted in Defendants' conduct in managing all . . . [the] funds as a group.'" *Urakhchin*, 2016 WL 4507117, at *4 (quoting *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012)) (citing *Walsh v. Marsh & McLennan Cos., Inc.*, No. 04-0888, 2006 WL 734899, at *1 (D. Md. Feb. 27, 2006)). Accordingly, the Court finds Defendants' argument without merit and will deny Defendants' motion to dismiss on this basis.[3]

---

[3] Having found that, in this matter, Plaintiff has Article III standing to challenge Plan funds in which she did not invest, the Court need not address Defendants' argument that Plaintiff "cannot circumvent the standing requirement under a theory of 'representational standing' by alleging that she brings this suit 'on behalf of the Plan.'" (ECF No. 10-1 at 15).

7

In addition to Defendants' aforementioned argument, which addresses whether Plaintiff has constitutional standing to assert her claims for damages, Defendants aver that Plaintiff lacks constitutional standing to assert her claims for prospective equitable relief because Plaintiff "has already cashed out and is a former participant in the Plan." (ECF No. 10-1 at 16). In response, Plaintiff maintains that "[e]ven as [a] former participant, Plaintiff can bring an action under 29 U.S.C. § 1132(a)(2), which permits current and former participants to sue for 'appropriate relief' arising out of a fiduciary's breach of its duties." (ECF No. 17 at 15).

In *Cryer v. Franklin Templeton Resources, Inc.*, the defendant argued that the plaintiff did "not have standing to bring claims that s[ought] injunctive relief because he ha[d] withdrawn his funds from the Plan." No. 16-4265, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017), *reconsideration denied sub nom. Cryer v. Franklin Res., Inc.*, No. 16-4265, 2017 WL 4410103 (N.D. Cal. Oct. 4, 2017). Explicitly rejecting the case Defendants rely on,[4] the court held "that 'employees who cash out of a defined contribution ERISA plan are still "participants" in that plan, as defined by 29 U.S.C. § 1002(7), regardless of whether they withdrew their assets voluntarily.'" *Id.* (quoting *Harris v. Amgen, Inc.*, 573 F.3d 728, 734 (9th Cir. 2009)). In further elaborating on *Harris*, the court explained:

> The [*Harris*] court rejected the proposition that such a plaintiff has standing only under 29 U.S.C. § 1132(a)(1)(B), which permits participants "to recover benefits due," and not under 29 U.S.C. § 1132(a)(2), which permits participants to sue for "appropriate relief." Appropriate relief includes equitable remedies. The court held that a participant who has cashed out "has statutory standing to assert fiduciary duty claims under Section 502(a)(2), even when relief is also available under Section 502(a)(1)(B)."

---

[4] *See DeFazio v. Hollister Emp. Share Ownership Tr.*, 612 F. App'x 439 (9th Cir. 2015).

8

*Id.* (quoting *Harris*, 573 F.3d at 734 n.4 & 735). Based on the foregoing, the Court finds that Plaintiff does not lack standing on the basis that she has already cashed out of the Plan and will deny Defendants' motion to dismiss for lack of subject matter jurisdiction.

### B. Plaintiff States a Claim Upon Which Relief May Be Granted

Defendants contend that Plaintiff fails to state a claim upon which relief may be granted under ERISA because: (1) under controlling Third Circuit precedent, Plaintiff's excessive fee claims, as well as Plaintiff's claims regarding a lack of variety in the offered funds, fail because "the mix and range of investment options and overall expense ratios for the Plan's investment options are reasonable," (ECF No. 10-1 at 21); (2) "ERISA does not require a fiduciary to select the 'cheapest' possible fund," (*id.* at 24); (3) "[t]hat a service provider (here, Transamerica) gets paid for its services [through revenue sharing][5] does not create a conflict of interest," (*id.* at 27); and (4) "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation." (*Id.* at 28-29 (citations omitted)). Defendants also aver that Plaintiff fails to state a claim upon which relief may be granted under ERISA with respect to whether Defendants published misleading and inaccurate disclosures. (*Id.* at 30 n.18). Each of Defendants' arguments will be addressed in turn.

#### 1. Controlling Third Circuit Precedent

In *Renfro v. Unisys Corporation*, the Third Circuit held that in "evaluating an ERISA breach of fiduciary duty claim targeting the selection and maintenance of a mix and range of investment options in a 401(k) defined contribution plan," courts must look "first to the characteristics of the mix and range of options and then evaluate[] the plausibility of claims

---

[5] "[R]evenue sharing [is] a common method of compensation whereby the mutual funds on a defined contribution plan pay a portion of investor fees to a third party." *Tussey v. ABB, Inc.*, 746 F.3d 327, 331 (8th Cir. 2014).

challenging fund selection against the backdrop of the reasonableness of the mix and range of investment options." 671 F.3d 314, 326 (3d Cir. 2011). "Under that framework, [if a c]ourt conclude[s] that in light of the available options . . . [a] plaintiff[] ha[s] 'provided nothing more than conclusory assertions' of fiduciary breach[, the court should] dismiss[] of the case." *Sweda v. Univ. of Pa.*, No. 16-4329, 2017 WL 4179752, at *5 (E.D. Pa. Sept. 21, 2017) (quoting *Renfro*, 671 F.3d at 327-28), *appeal filed*, No. 17-3244 (3d Cir. Oct. 13, 2017); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).

Nonetheless, in cases where a plaintiff's allegations go beyond mere conclusory assertions of a breach of fiduciary duty, dismissal may not be warranted at the motion to dismiss stage. Such allegations may include challenges to "the fiduciary's decision to include a particular investment option." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1078-79 (N.D. Cal. 2017). Additionally, such allegations may assert purported wrongdoing with respect to excessive fees. *See id.* at 1080. Under such circumstances, courts, including a court in this District, have found that *Renfro* did not support dismissal at the motion to dismiss phase. *See Nicolas v. Trustees of Princeton Univ.*, No. 17-3695, 2017 WL 4455897, at *4 (D.N.J. Sept. 25, 2017), *reconsideration denied*, No. 17-3695, 2017 WL 6514662 (D.N.J. Dec. 20, 2017); *see also Terraza*, 241 F. Supp. 3d at 1078-80.

Here, regardless of whether the mix and range of investment options and overall expense ratios for the Plan's investment options are reasonable,[6] the Court finds that *Renfro* does not, at this preliminary juncture, sustain dismissal of this matter, as Plaintiff contests Defendants' selection and retention of certain funds. (*See, e.g.*, ECF No. 1 ¶ 32 (challenging the currently

---

[6] The Court acknowledges the parties' specific contentions with respect to the investment options and expense ratios in this matter, (ECF Nos. 10-1 at 19-23; 17 at 21-24; 19 at 10-13); however, the Court finds that it need not address such arguments to ajudicate Defendants' motion to dismiss.

offered proprietary institutional government money market fund), ¶¶ 51-58 (challenging the inclusion of various other funds)). "As a result, the overall expense ratio range is less relevant in this case . . . . [and] Defendants cannot point to the prudence of the portfolio as a whole to evade their duty of prudence with respect to the challenged investment options." *Terraza*, 241 F. Supp. 3d at 1079; *see also Sweda*, 2017 WL 4179752, at *5 ("A plaintiff can allege an inadequate 'mix and range of options' by alleging . . . that all (or the vast majority of) options breach the fiduciary duty[.]") (citing *Renfro*, 671 F.3d at 314; *Hecker*, 556 F.3d at 575; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009)).

The Court also finds that Plaintiff's claims survive dismissal because Plaintiff here alleges wrongdoing on behalf of Defendants. That is, Plaintiff purports that Defendants have failed to ensure that Transamerica's share of revenue was equitable. (ECF No. 1 ¶¶ 36-37). Plaintiff also declares that Transamerica is subject to a conflict of interest whereby it is encouraged to hire and retain its affiliates as sub-advisers irrespective of how their funds are performing. (*Id.* ¶¶ 46, 48-49). Finally, Plaintiff argues that Defendants selected and retained funds with unjustifiable fees, some of which continue to underperform. (*Id.* ¶¶ 31, 35, 38-42, 46, 48-49, 51-58). The Court finds that such contentions are sufficient to state a claim upon which relief may be granted that Defendants violated their fiduciary duties under ERISA.[7] *See Nicolas*, 2017 WL 4455897, at *4 ("Here, in addition to the types of factual allegations in *Renfro*, Plaintiff has alleged specific breaching conduct: failing to conduct a competitive bidding process; failing to use significant

---

[7] The Court also finds notable Plaintiff's allegations with respect to a lack of variety in the offered funds, which the Eastern District of Pennsylvania has found may suffice in alleging a claim for breach of fiduciary duty under ERISA. *See Sweda*, 2017 WL 4179752, at *5 ("A plaintiff can allege an inadequate 'mix and range of options' by alleging insufficient choice . . . [or] an insufficient variety among the range of options[.]").

11

bargaining power to negotiate lower fees; retaining two recordkeepers; and failing to remove two particularly unreasonable funds. Other courts to have considered substantially similar complaints have found them to survive motions to dismiss for similar reasons."); *Terraza*, 241 F. Supp. 3d at 1080 (finding that where the plaintiff alleged that the defendant unreasonably compensated the Plan's record-keeper and allowed the Plan's trustee to improperly influence the investment options, that the plaintiff's allegations supported her claim that the fiduciaries breached their duties to the Plan); *see also Sweda*, 2017 WL 4179752, at *5 ("A plaintiff can allege an inadequate 'mix and range of options' by alleging . . . a kickback scheme where the fiduciaries directly benefit at the expense of plan participants.") (citing *Renfro*, 671 F.3d at 314; *Hecker*, 556 F.3d at 575; *Braden*, 588 F.3d at 585). As such, Defendants' motion to dismiss will be denied on this basis.

### 2. Selection of the Cheapest Possible Funds

As to Defendants' contention that ERISA does not require a fiduciary to select the cheapest possible funds, the Court agrees that "Defendants' failure to offer the investment option with the lowest expense ratio is not enough, on its own, to plausibly state a claim for breach of the duty of prudence." *Terraza*, 241 F. Supp. 3d at 1076. That is, "[t]he fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586.

Here, however, Plaintiff's allegations go beyond accusations that Defendants failed to select and retain the cheapest possible funds.[8] More specifically, Plaintiff alleges that despite the

---

[8] Accordingly, the Court need not address Defendants' specific contentions, or Plaintiff's responses, with respect to the Vanguard 2050 Institutional Target Date Fund being an inappropriate "cheaper comparison" to the Fund in which Plaintiff did invest. (ECF Nos. 10-1 at 17-18; 17 at 19-20; 19 at 8-10).

12

underperformance of various Transamerica funds, Defendants continued to invest in such funds and pay their expensive fees. (ECF No. 1 ¶¶ 46, 48-49). Describing such fees as costly and unreasonable, Plaintiff purports that the selection and retention of such funds may have been influenced by the fact that such funds were sub-advised by Aegon, Transamerica's affiliate, and that Transamerica could "receive more revenue when it select[ed] an affiliated fund rather than an unaffiliated fund." (*Id.*). "When viewed collectively, the Court can reasonably infer from these allegations that . . . Defendants engaged in a flawed decision-making process by selecting and retaining the challenged investment options." *Terraza*, 241 F. Supp. 3d at 1076 (citing *Braden*, 588 F.3d at 596-98 (holding that the plaintiff stated a claim for breach of fiduciary duty where he alleged that the Plan offered funds that charged higher fees than available alternatives, that underperformed during the relevant time period, and that were included in the Plan because of improper influence by the Plan's trustee)).[9] Accordingly, Defendants' motion to dismiss will be denied on this basis.

### 3. Conflicts of Interest and Revenue Sharing

The Court next turns to Defendants' contention that just because "a service provider (here, Transamerica) gets paid for its services [through revenue sharing, it] does not [necessarily] create a conflict of interest[.]" (ECF No. 10-1 at 27). In response, Plaintiff concedes that "[t]here is nothing wrong, in principle, with paying a recordkeeper through revenue sharing," (ECF No. 17

---

[9] The Court also finds pertinent Plaintiff's allegation that Defendants "did not . . . select the least expensive share class of the T. Rowe Price 2050 Target Date Fund, which would have no other distinction than being 0.25% cheaper," (ECF No. 17 at 20 (citing ECF No. 1 ¶ 58)), as courts have found based on similar allegations that plaintiffs stated a claim that defendants have "acted imprudently by selecting the more expensive option, all else being equal." *Terraza*, 241 F. Supp. 3d at 1076; *see also Braden*, 588 F.3d at 595-96.

13

at 35); however, Plaintiff alleges that she is claiming more than mere payment of services through such mechanism. (*See id.* at 35-37).

"While revenue sharing is a 'common industry practice,' a fiduciary's failure to ensure that 'recordkeepers charged appropriate fees and did not receive overpayments for their services' may be a violation of ERISA." *Sacerdote v. N.Y. Univ.*, No. 16-6284, 2017 WL 3701482, at *9 (S.D.N.Y. Aug. 25, 2017), *reconsideration denied*, No. 16-6284, 2017 WL 4736740 (S.D.N.Y. Oct. 19, 2017).

> At this point, [P]laintiff[] do[es] not have the burden "to rule out every possible lawful explanation" for the allegedly overcharged recordkeepers' fees used in the Plan. [D]efendants can be held accountable for failing to monitor and making sure that the recordkeepers charged appropriate fees and did not receive overpayments for their services.

*Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1353 (N.D. Ga. 2017).

Here, Plaintiff's allegations do not solely pertain to the fact that Transamerica got paid through revenue sharing. Rather, Plaintiff purports that Defendants failed to: (1) ensure that Transamerica's share of revenue was equitable, (ECF No. 1 ¶¶ 36-37); (2) determine whether Transamerica's fees were appropriate in light of the fact that Transamerica was hiring its affiliates to sub-advise funds, which added an extra layer of fees to the Plan's costs and implicated a potential conflict of interest, (*id.* ¶¶ 35, 38-42, 44, 46, 48-49); (3) verify that Transamerica was not overcharging the Plan for funds that were underperforming, (*id.* ¶ 46, 48-49); and (4) determine whether fees were appropriate compared to the fees of similar funds. (*Id.* ¶¶ 51-58). Based on these allegations, the Court finds that Plaintiff states a claim upon which relief may be granted and will deny Defendants' motion to dismiss on this basis. *See Henderson*, 252 F. Supp. 3d at 1353 (declining to dismiss Plaintiff's ERISA claims because Plaintiff's allegations pertaining to the

"defendants' 'revenue sharing' method [as being] improper and overcompensat[ing] the recordkeepers" were sufficient to state a claim at the motion to dismiss stage).

### 4. Poor Performance

Defendants also maintain that Plaintiff's allegations that certain funds underperformed are not sufficient to state a claim under ERISA. The Court agrees with Defendants that "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation – either when the investment was selected or as its underperformance emerged – as ERISA requires a plaintiff to plead some other objective indicia of imprudence." *White v. Chevron Corp.*, No. 16-0793, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016). Based on the discussion above, however, the Court finds that Plaintiff alleges more than just poor performance of funds and therefore, Defendants' argument is without merit. *See supra.* (discussing Plaintiff's allegations with respect to Defendants' imprudence above and beyond the poor performance of certain funds).

### 5. Misleading and Inaccurate Disclosures

Finally, the Court addresses Defendants' argument that Plaintiff fails to state a claim upon which relief may be granted that Defendants published misleading and inaccurate disclosures in their Form 5500s.[10] In sum, Defendants assert that Plaintiff has failed to plead the third and fourth elements of a cause of action for misrepresentation. (ECF No. 10-1 at 30 n.18 (citing *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) ("[A] breach of fiduciary duty claim may be premised on either a misrepresentation or an omission. To establish

---

[10] "'The Form 5500 is an "Annual Return/Report of Employee Benefit Plan."' Form 5500 is required to be filed with the Internal Revenue Service . . . and D[epartment of] L[abor]." *Jacobs v. Verizon Commc'ns, Inc.*, No. 16-1082, 2017 WL 8809714, at *2 n.3 (S.D.N.Y. Sept. 28, 2017) (citations omitted).

15

such a breach, a plaintiff must demonstrate that: (1) the defendant was 'acting in a fiduciary capacity'; (2) the defendant made 'affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries'; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure.") (citations omitted))). In response, Plaintiff declares that "whether she detrimentally relied upon Defendants' misrepresentations is entirely irrelevant; those misrepresentations harmed the Plan and its participants as a whole." (ECF No. 17 at 39).

As the Court discussed *supra*, in these types of ERISA cases, a plaintiff "can establish constitutional standing to bring representative claims by pointing to injuries to Plan assets." *Leber*, 323 F.R.D. at 155. Although Defendants aver that Plaintiff "does not allege harm or losses to the Plan caused by the Form 5500s," (ECF No. 19 at 15 n.11), the complaint alleges that as a direct result of Defendants' misleading and inaccurate disclosures, the Plan has suffered losses and damages. (ECF No. 1 ¶¶ 61-68, 77).[11] Such losses and damages may have resulted from Plan participants choosing certain funds without all of the information necessary to make an informed decision. (*Id.* ¶¶ 61-67; *see also id.* ¶ 68 ("As demonstrated, Defendants caused to be disseminated

---

[11] The Court also recognizes Defendants' argument that Plaintiff fails to state a claim because "the Form 5500s . . . contain the very information that [Plaintiff] says should have been included[.]" (ECF No. 10-1 at 30 n.18; *see also* ECF No. 19 at 13-14 (describing why the Form 5500s were not misleading)). Plaintiff, however, does not contest that such information was included in the Form 5500s, but rather, "Plaintiff does not accept or agree that the statements contained in these Form 5500s [we]re either truthful or accurate." (ECF No. 17 at 19). Because "these documents may only be considered for the fact that they contain a statement therein but not to prove the truth of the statement," *Cunningham v. Cornell Univ.*, No. 16-6525, 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017); *see also In re Hertz Glob. Holdings, Inc. Sec. Litig.*, No. 13-7050, 2015 WL 4469143, at *6 n.4 (D.N.J. July 22, 2015), the Court finds it inappropriate to adjudicate Plaintiff's claim at this stage of the litigation and will therefore deny Defendants' motion to dismiss on this ground. Nevertheless, the Court notes that, if appropriate, Defendants may renew such argument in a motion for summary judgment after the completion of discovery.

misleading information that failed to inform participants about the true nature of their investments.")). As such, at this stage of the litigation, the Court finds that Plaintiff states a claim upon which relief may be granted and will deny Defendants' motion to dismiss on this basis.[12] As all of Defendants' arguments have been found to be without merit, the Court will deny Defendants' motion to dismiss in its entirety.

* * *

The Court notes that ultimately, Defendants may "persuade the Court that that they had legitimate reasons to select the challenged investment options, [that they did not publish misleading and inaccurate disclosures,] and [that they] thus did not act imprudently[.]" *Terraza*, 241 F. Supp. 3d at 1077. Nonetheless, Plaintiff "has satisfied her burden at this stage of the litigation[.]" *Id.* Accordingly, the Court finds that Plaintiff states a claim upon which relief may be granted.

## V. **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is DENIED. An appropriate Order accompanies this Opinion.

DATED: October 2, 2018

Claire C. Cecchi, U.S.D.J.

---

[12] As Plaintiff concedes, however, "this action is at the pleadings stage; determining whether any Plan participants are entitled to any benefits as a direct result of Defendants' misrepresentations is highly premature." (ECF No. 17 at 39).

17